UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D. DWAYNE TUCKER,

    Plaintiff,

v.

VOLKSWAGEN GROUP OF AMERICA, INC., NICK CARDONI, and DAKO RESOURCES, INC.,

    Defendants.

Case No. 17-13427
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [39, 40, 43] AND DENYING AS MOOT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [44]**

    D. Dwayne Tucker has diabetes that he says impacts his vision. He worked as a customer experience specialist for a Porsche customer call center. Porsche is an affiliate of Volkswagen. Tucker was placed at Porsche's call center through DAKO Resources, a staffing agency contracted to provide workers for Volkswagen. After only three months on the job, Volkswagen asked DAKO to end Tucker's placement. Soon after, Tucker sued Volkswagen, DAKO, and a manager at the Porsche call center. Tucker alleged all Defendants denied him a reasonable accommodation, created a hostile work environment, and had a neutral policy—discouraging public transit—that had a disparate impact on him.

    The parties conducted discovery and, eventually, all Defendants moved for summary judgment. Tucker did not respond to those motions. But he did move for partial summary judgment on an ancillary issue. Upon review of the record, for the reasons that follow, Defendants have met their summary judgment burden. So Tucker's claims will be dismissed and his motion denied as moot.

**I.**

In April 2016, DAKO Resources Group informed D. Dwayne Tucker about a job opportunity with Porsche, an affiliate of Volkswagen. (ECF No. 39, PageID.872.) Volkswagen was seeking customer experience specialists, people "empowered to 'do what it takes' to leave a customer with the very best impression" of the brand. (*Id.* at PageID.873.) Although "[d]elivering exceptional customer experiences" was the job's "only priority[,]" Volkswagen also indicated an essential function of the job would be to "[p]roperly document customer information in[to]" Porsche's customer database. (*Id.*)

Tucker got the job. (ECF No. 39, PageID.583.) He started on May 23, 2016. (*Id.*)

In the time Tucker spent as a customer experience specialist, he struggled. (*See* ECF No. 39, PageID.585; *see also* ECF No. 39-7.) According to Tucker, he struggled most with the customer database. Tucker had "low vision," a condition he says was made worse by his diabetes. (*Id.* at PageID.617.) As a result, he had trouble reading customer data as it appeared on the Avaya program. (*Id.* at PageID.607, 612–613.) Avaya was the call management application Volkswagen used to manage and distribute workflow among the customer experience specialists. (*Id.* at PageID. 578.) The customer experience specialists, like Tucker, were supposed to use customer information to input customer contacts into Porsche's customer database. To better see the customer data, Tucker asked for larger font sizes on his Avaya system. More specifically, Tucker wanted the customer phone number on the Avaya system to be in a larger font. (*Id.* at PageID.637–638.) But neither Volkswagen nor DAKO would accommodate his request. (*Id.*) Because he had trouble using Avaya, Tucker had problems entering data into Porsche's customer database. (*Id.*)

In his time at Porsche, Tucker experienced other problems as well. Tucker rode the bus to work. (ECF No. 29, PageID.703.) And he believes Volkswagen and DAKO had a problem with

that. (*Id.* at PageID.703–704.) Specifically, a Volkswagen employee named Nick Cardoni frequently brought up the fact that Tucker relied on public transit. (*Id.* at PageID.708.) Cardoni would say things like "Hey Dennis, what's going on with transportation, what's up with the car situation." (*Id.* at PageID.705.) Tucker interpreted Cardoni's comments as an unnecessary injection of race into the workplace. (*Id.* at PageID.703–704.) As Tucker put it, "many people like myself from Detroit, dark skin, we have to ride the bus out there for various reasons, and the fact that I had to ride the bus and did not have a car, Mr. Cardoni took issue with that." (*Id.*)

With less than three months on the job, Volkswagen asked DAKO to transfer Tucker out of the Porsche call center. (*Id.* at PageID.409, 627.) Tucker's time in the call center came to an end on August 15, 2016.

Based on all of the above, Tucker filed suit against Volkswagen and DAKO. Initially he brought failure to accommodate claims under the Americans with Disabilities Act and Michigan's state-law analogue. Both claims centered on Volkswagen and DAKO's failure to accommodate Tucker's low vision. In time, Tucker amended his complaint to add Cardoni and claims of hostile work environment and disparate impact. The hostile work environment claim arose out of Cardoni's interactions with Tucker over public transit and car ownership. And Tucker alleged Volkswagen and DAKO had a de facto policy of discouraging public transit, a neutral policy that nonetheless had a disparate impact on African-Americans. (*Id.* at PageID.704–709.)

Volkswagen, DAKO, and Cardoni each move for summary judgment. (ECF No. 39, 40, 43.) Tucker did not respond to any of them. He did, however, move for partial summary judgment on the grounds that diabetes is a disability for the purposes of the ADA. (ECF No.44.)

**II.**

Summary judgment is warranted if the moving party shows there are no genuine disputes of material fact and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At this stage, the evidence must be viewed in the light most favorable to the non-movant. *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014) (internal quotations and citations omitted). That requires making all reasonable inferences in the non-movant's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a party does not respond to a motion for summary judgment, the Court may not summarily grant summary judgment. *F.T.C.*, 767 F.3d at 630. Instead, the Court must conduct its own "searching review" of the materials submitted by the moving party. *Id.* (quoting *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979)); *accord Ordos City Hawtai Autobody Co. v. Dimond Rigging Co., LLC*, 695 F. App'x 864, 872 (6th Cir. 2017). The searching review is to ensure the moving party has carried its summary judgment burden, "i.e., whether the facts, as presented by the defendants, required a determination that they were entitled to judgment as a matter of law." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000) (quoting *Guarino v. Brookfield Tp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992)). But it is not the Court's role to "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Guarino*, 980 F.2d at 410.

**III.**

Tucker's amended complaint contains three counts, each relying on at least one theory of liability. Tucker's first count is grounded on the Americans with Disabilities Act. (ECF No. 19,

PageId.117–119.) The ADA claims are brought against Volkswagen and DAKO. (*Id.*) Tucker alleges the two corporations failed to accommodate his low vision and created a hostile work environment based on disability. (*Id.*) Tucker also seeks relief against all Defendants under Michigan's Persons With Disabilities Civil Rights Act on a failure-to-accommodate theory. (*Id.* at PageID.119–122.) Finally, Tucker pleads a count under the Elliott-Larsen Civil Rights Act. (*Id.* at PageID.122–124.) Against all Defendants, Tucker alleges racial discrimination based on disparate impact and hostile work environment.

All Defendants say they are entitled to judgment as a matter of law on all Tucker's claims.

## A.

Start with Tucker's claim under the Persons With Disabilities Civil Rights Act. Mich. Comp. Laws § 37.1210. Tucker says all Defendants failed to accommodate his disability and, in so doing, discriminated against him on the basis of a disability. However, the PWDCRA requires, among other things, that Tucker give notice "in writing of the need for accommodation within 182 days after the date [Tucker] knew or reasonably should have known that an accommodation was needed." Mich. Comp. Laws § 37.1210(18). Failing to comply with the notice requirement is grounds for dismissal. *See Petzold v. Borman's, Inc*., 617 N.W.2d 394, 398–99 (Mich. Ct. App. 2000). And no matter what might satisfy the notice requirement, nothing in the undisputed record suggests Tucker gave any written notice. *Cf. Hodnett v. Chardam Gear Co*., 749 F. App'x 390, 396 & n.2 (6th Cir. 2018) (suggesting that a doctor's report sent to an employee might satisfy the PWDCRA's written-notice requirement but also affirming that the PWDCRA requires some form of written notice). Indeed, Tucker admits he never gave written notice. (ECF No. 39, PageID.804–805.) So Defendants are entitled to summary judgment on Tucker's PWDCRA claim.

5

**B.**

Consider, next, Tucker's count under the Elliott-Larsen Civil Rights Act. The ELCRA count relies on two theories of liability. (ECF No. 19, PageID.123.) First Tucker thinks Volkswagen and DAKO had a de facto policy of requiring their workers to own a car. (*Id*.) And because Detroiters are predominantly African-American and because almost a quarter of Detroiters do not own a car, Tucker alleges Volkswagen's and DAKO's de facto policy had a disparate impact on their African-American employees. (*Id.* at PageID.123–124.) Moreover, Cardoni frequently brought up Tucker's lack of a vehicle. (*Id.* at PageID.123.) Tucker interpreted Cardoni's comments as harassment motivated by race. (ECF No. 39, PageID.703–704.) So Tucker alleges Cardoni created a hostile work environment based on race.

All Defendants say Tucker cannot establish the elements of a disparate impact claim and cannot establish that Cardoni's comments created a hostile work environment.

The ELCRA prohibits employers from "discriminate[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race." Mich. Comp. Laws § 37.2202(1)(a). The ELCRA's language is substantially similar to Title VII's text. *See* 42 U.S.C.A § 2000e-2(a)(1). And where the ELCRA and Title VII are substantially similar, Michigan courts "consider federal case law interpreting Title VII to be persuasive, albeit not binding, authority on issues brought under the [ELCRA]." *Pena v. Ingham County Rd. Comm'n*, 660 N.W.2d 351, 358 n.3 (Mich. Ct. App. 2003) (citing *Krohn v. Sedgwick James of Mich., Inc.*, 624 N.W.2d 212, 216 n.4 (Mich. Ct. App. 2001)).

**1.**

Under the ELCRA, to show a hostile work environment, Tucker must make out a prima-facie case. Tucker needs to show he belonged to a protected group, he was subjected to

communication on the basis of race, the communication was unwelcome, the unwelcome conduct "was intended to or in fact did substantially interfere with [his] employment or created an intimidating, hostile, or offensive work environment," and respondeat superior. *Quinto v. Cross & Peters Co.*, 547 N.W.2d 314, 319–20 (Mich. 1996).

For one, it is not at all clear Tucker can show he was subjected to communication on the basis of race. Tucker remembers Cardoni talking about Tucker's lack of a car. But nothing in the undisputed record shows Cardoni made any explicit, race-based communication to Tucker. Rather, the record shows Cardoni mentioned transportation because he worried Tucker might not make it on time for later shifts. (*See* ECF No. 39, PageID.892.) So the record offers little reason to think Tucker can establish the second element of a prima facie case.

Even assuming Tucker can show Cardoni made communications on the basis of race, Tucker still has a problem establishing that any unwelcome communications were "sufficiently severe or pervasive" such that they "create[d] a hostile work environment." *Id.* at 320. Whether communication or conduct is severe or pervasive turns on "whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with [their] employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Radtke v. Everett*, 501 N.W.2d 155, 167 (Mich. 1993). The totality of the circumstances encompasses "the frequency of the … conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Broska v. Henderson*, 70 F. App'x 262, 269 (6th Cir. 2003) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, the evidence "is so one-sided that there is no genuine issue of material fact as to whether there was a hostile work environment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321,

333 (6th Cir. 2008) (citing *Abeita v. Transam. Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998)). True, the record shows Cardoni frequently asked Tucker about transportation to work, maybe 20 times. (ECF No. 39, PageID.703–704.) And to be sure, Tucker subjectively believed Cardoni's comments were racially motivated. However, nothing in the record would allow a reasonable person to think Cardoni's comments created a hostile work environment based on race. Tucker recalls only one specific instance and that instance went like this: Cardoni asked Tucker, "Hey Dennis, what's going on with transportation, what's up with the car situation." (*Id.*) To give some context for Cardoni's comment, the undisputed record makes plain Cardoni had concerns about Tucker's timeliness. (*See, e.g.*, ECF No. 39, PageID.892.) And the undisputed record contains nothing to suggest Cardoni used any epithets or mentioned race. So given the comments' context and the neutral language Cardoni used, no reasonable person could interpret Cardoni's comments as severe and pervasive such that they created a hostile work environment. Rather, a reasonable person could only interpret Cardoni's communications as an inquiry into whether Tucker would be able to arrive on time for an evening shift. Thus, Tucker cannot establish the fourth element of a prima facie case of hostile environment.

**2.**

Next turn to Tucker's disparate-impact theory of racial discrimination. Under the ELCRA, a prima facie case of disparate impact requires Tucker to establish that he was a member of a protected class and that a "facially neutral employment practice burdened a protected class of persons more harshly than others." *Roberson v. Occupational Health Ctrs. of Am.*, 559 N.W.2d 86, 89 (Mich. Ct. App. 1989) (quoting *Reisman v. Regents of Wayne State Univ.*, 470 N.W.2d 678, 685 (Mich. Ct. App. 1991)).

On the undisputed record, Tucker cannot establish the second element. Tucker thinks Volkswagen and DAKO had a de facto policy requiring employees to own a car. (ECF No. 39, PageID.743–744.) And Tucker thinks that de facto policy had a disparate impact on African-Americans. (*Id.*) But even Tucker admits nobody from Volkswagen or DAKO ever communicated such a policy to Tucker. (*Id.*) Instead, Tucker tries to manufacture a Volkswagen and DAKO policy by pointing to an email Cardoni sent to DAKO. (ECF No. 39, PageID.892.) Cardoni emailed DAKO to express concerns about Tucker. (*Id.*) One of those concerns was Tucker's transportation situation. (*Id.*) Because Tucker relied on the bus, Cardoni worried about Tucker's ability to arrive on time once his shift changed to an evening start. (*Id.*) The Court seriously doubts Tucker has any evidence of anything close to an employment policy requiring car ownership. But even assuming he does, nothing in the record shows the policy burdened African-Americans any more than others. (*See* ECF No. 39, PageID.744–746.) True, Tucker alleged a burden. (ECF No. 19, PageID.122–124.) But Tucker acknowledges he has no aggregate data from which to show a disparate impact. (*Id.*) So Tucker cannot show a burden and, consequently, cannot establish the second element of a disparate-impact claim under the ELCRA.

**3.**

In sum, all Defendants are entitled to summary judgment on Tucker's ELCRA claims. On the hostile-environment and disparate-impact claims Volkswagen, DAKO, and Cardoni show they are entitled to prevail as a matter of law. And all three establish that there are no genuine issues of fact requiring a trial.

**C.**

That leaves Tucker's ADA claims. Tucker says DAKO and Volkswagen failed to offer a reasonable accommodation for his low vision and created a hostile work environment. As evidence

9

of a hostile work environment, Tucker once more points to Cardoni's comments about Tucker's lack of a car. (ECF No. 19, PageID.118.) But here, Tucker repackages Cardoni's comments as evidence that Volkswagen and DAKO "created and permitted" a hostile workplace environment based on disability. (*Id.*)

DAKO and Volkswagen say both claims fail.

**1.**

Hostile work environment under the ADA mirrors a claim for sexual harassment. *See Coulson v. Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 858 (6th Cir. 2002). So to establish a hostile-work-environment claim under the ADA, Tucker needs to show, among other things, "harassment that unreasonably interfered with his work performance[.]" *Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005). Similar to the ELCRA claim, the harassment means "[t]he workplace must be permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe and pervasive as to alter the conditions of [Tucker's] employment and create an abusive working environment.'" *Id.* (citing *Harris*, 510 U.S. at 21). And "the harassment must meet both an objective and a subjective test, 'in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim.'" *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008) (quoting *Randolph v. Ohio Dep't of Youth Svcs.*, 453 F.3d 724, 733 (6th Cir. 2006)).

Tucker's ADA hostile-environment claim fails. Considering the totality of the circumstances, no reasonable person would connect Cardoni's comments about transportation to Tucker's disability. Indeed, on the undisputed record, neither did Tucker. Tucker said he viewed Cardoni's comments as racist. Tucker never says he interpreted Cardoni's comments as having anything to do with his vision problem. So, on the undisputed record, Tucker cannot establish

either objective or subjective harassment. DAKO and Volkswagen are entitled to summary judgment on Tucker's ADA hostile-environment claim.

**2.**

All that remains is Tucker's failure-to-accommodate claim. Because of his low vision, Tucker says he needed a larger font size on the Avaya software. The Avaya software displayed caller-id information as calls came into his queue at the Porsche call center. And Tucker says the small font size prevented him from seeing the customers' phone numbers. Because Tucker could not see the phone numbers, he could not perform an essential function of his job: entering customer data into Porsche's database. And had Volkswagen and DAKO accommodated his low vision by increasing the font sizes, he would have had no problem performing the job.

For their part, Volkswagen and DAKO say Tucker cannot establish any of the elements of a prima facie case of a reasonable-accommodation claim.

Under the ADA, "discriminat[ion] against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, . . . ." 42 U.S.C § 12112(b)(5)(A). A prima facie case for failure to accommodate has five elements. *See Keogh v. Concentra Health Servs.*, 752 F. App'x 316, 326 (6th Cir. 2018) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). But exactly what those five elements are is subject to some variation. *Compare Keogh*, 752 F. App'x at 326, *with DiCarlo*, 358 F.3d at 419; *see also Gaines v. Runyan*, 107 F.3d 1171, 1175 (6th Cir. 1997).

Semantics aside, however, under any formulation, Tucker bears the burden of showing the employer failed to provide a "necessary" accommodation. *Keogh*, 752 F. App'x at 326; *accord Gaines*, 107 F.3d at 1175. And *necessary* does not mean *every*. *See Gaines*, 107 F.3d at 1178

(analyzing the "necessary" element and holding that employers need not provide "every accommodation requested"); *see also Gooden v. Consumers Energy Co.*, No. 12-11954, 2013 U.S. Dist. LEXIS 127970, at *16–18 (E.D. Mich. Sept. 9, 2013). To satisfy the necessary element, it is Tucker's burden to prove "that without the requested accommodation, he is unable to perform the essential functions of his job." *Gaines*, 107 F.3d at 1178.

Tucker cannot show that a larger font size in Avaya is necessary to perform an essential function. The essential function is to properly enter customer information into the Porsche database. (ECF No. 39, PageID.873.) And to properly enter customer information, Tucker did not need Avaya. Tucker admits as much. He says he could have asked customers to orally provide the phone number or name tied to their Porsche account. (ECF No. 39, PageID.643–644, 646.) And either way, he would have been able to access information in the Porsche database. (*Id.*) Indeed, Cardoni says Volkswagen does not expect its customer experience specialists to rely on Avaya (although they could if they wanted to). (ECF No. 39, PageID.580.) Cardoni explains that Avaya often populates incorrect phone numbers for one reason or another. (ECF No. 39, PageID.580.) So Volkswagen requires customer experience specialists to ask customers for the phone number on their accounts. (*Id.*) Thus, Tucker did not need a larger font size on Avaya to perform a necessary function of his job. As such, Tucker cannot establish a prima face case of failure to accommodate under the ADA.

**IV.**

In summary, Volkswagen, DAKO, and Cardoni are entitled to summary judgment. Having conducted a "searching review" of the record, all Defendants have carried their burden. As a matter of law, Tucker cannot make out claims under the ADA, ELCRA, or PWDCRA. Defendants

unopposed motions for summary judgment (ECF Nos. 39, 40, 43) are GRANTED and Tucker's motion for summary judgment (ECF No. 44) is DENIED as moot.

SO ORDERED.

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE

Date: August 16, 2019

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 16, 2019.

                                              s/William Barkholz
                                              Case Manager to
                                              Honorable Laurie J. Michelson